1

2

3

4          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
5              AT TACOMA/ SEATTLE

6    CRYSTAL F.,

7                          Plaintiff,        Case No. 3:23-cv-06100-TLF

8          v.                                 ORDER REVERSING AND
                                              REMANDING DEFENDANT'S
9    ACTING COMMISSIONER OF                   DECISION TO DENY BENEFITS
     SOCIAL SECURITY,
10
                          Defendant.
11

12         Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

13   defendant's denial of plaintiff's application for supplemental security income (SSI)

14   benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local

15   Rule MJR 13, the parties have consented to the jurisdiction of the Magistrate Judge.

16   Dkt. 5. Plaintiff challenges the ALJ's decision finding plaintiff not disabled. Dkt. 8,

17   Complaint.

18                    FACTUAL AND PROCEDURAL BACKGROUND

19         Plaintiff first applied for SSI in April 2009. *See* Administrative Record (AR) 94. An

20   ALJ issued an unfavorable decision which was later reversed by this Court. *See id.* On

21   remand, the ALJ issued another decision finding her not disabled in February 2014 (AR

22   91–119), the Appeals Council declined to review that decision in November 2014 after

23   Plaintiff filed exceptions (*see* AR 120–24), and the decision was ultimately affirmed by

24   the Ninth Circuit (*see* Dkt. 16 at 2 n.1).

25

Plaintiff applied again for SSI in May 2015. *See* AR 275–76, 1436. Her application was denied at the initial level and on reconsideration. AR 128–53. ALJ Allen Erickson conducted a hearing in February 2017 (AR 44–90) and issued a decision in June 2017 (AR 12–35); the ALJ's decision was reversed by Magistrate Judge J. Richard Creatura based on new evidence submitted to the Appeals Council (*see* AR 744–52). ALJ Erickson conducted a hearing on remand in November 2020 (AR 677–706) and issued another decision finding plaintiff not disabled in January 2021 (AR 643–76); that decision was reversed and remanded pursuant to a stipulation by the parties (AR 1537–42).

On remand, ALJ David Johnson (the ALJ) held hearings on plaintiff's application on November 15, 2022 (AR 1473–80), and May 1, 2023 (AR 1481–1500). On July 28, 2023, the ALJ issued a decision denying benefits. AR 1433–72.

The ALJ found plaintiff had the severe impairments of depressive disorder, panic disorder, agoraphobia, posttraumatic stress disorder (PTSD), obsessive-compulsive disorder (OCD), and generalized anxiety disorder. AR 1439. The ALJ found plaintiff had the residual functional capacity (RFC) to

> perform a full range of work at all exertional levels that consists of simple instructions; that consists of tasks that follow a set routine; that is quota-based rather than production-paced; that does not require interaction with the general public; and that does not require more than occasional interaction with coworkers.

AR 1445. Plaintiff did not file exceptions with the Appeals Council, so the ALJ's decision was the Commissioner's final decision subject to judicial review. *See* 20 C.F.R. § 416.1484(a). Plaintiff appealed to this Court. *See* Dkt. 8 (Complaint).

1

DISCUSSION

2      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

3    denial of Social Security benefits only if the ALJ's findings are based on legal error or

4    not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

5    F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "such

6    relevant evidence as a reasonable mind might accept as adequate to support a

7    conclusion." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

8    omitted).

9      The Court must consider the administrative record as a whole. *Garrison v.*

10   *Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

11   evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The

12   Court may not affirm the decision of the ALJ for a reason on which the ALJ did not rely.

13   *Id.*

14     Plaintiff argues the ALJ erred in assessing the filing date, several medical

15   opinions, her subjective testimony, and the statement of a lay witness.[1]

16   **A. Whether the ALJ Erred in Declining to Consider the March 2014 to May 2015**

17   **Period**

18     On March 20, 2014, plaintiff signified an intent to file exceptions to the second

19   ALJ decision on her 2009 claim; in this statement, she requested Commissioner "use

20   the date of [her] request for review[] as the protective filing date for a new application."

21

22   [1] Plaintiff also contends the ALJ's RFC assessment was erroneous because it did not include limitations
     supported by the evidence she contends was evaluated erroneously. Dkt. 16 at 13. Because the Court
23   concludes the ALJ harmfully erred in discounting or rejecting certain medical evidence, and evidence
     provided by plaintiff's statements about symptoms and limitations, the RFC may not have included all
24   relevant limitations and should be re-evaluated on remand.

25

3

1    AR 900; *see also* AR 910. In denying her request for review, the AC did not indicate

2    whether this request was granted. *See* AR 120–24.

3        The Notice of Hearing issued before the February 2017 hearing notified plaintiff

4    the ALJ would hear matters that "concern[ed] [plaintiff's] application of June 12, 2015,

5    for [SSI]." AR 204.

6        After the decision resulting from that hearing was reversed by this Court, and

7    before the November 2020 hearing, plaintiff requested March 20, 2014, be used as her

8    protective filing date. AR 899. She made the same request before her November 2022

9    hearing, and the ALJ "f[ound] that [the] motion is untimely [and therefore] denied" it. AR

10   1436. Plaintiff requested a protective filing date of March 20, 2014 at the beginning of

11   the hearing on May 1, 2023, and the ALJ stated he would take it under advisement. AR

12   1487-1488. Plaintiff argues the ALJ erred by not considering whether she was under a

13   disability beginning March 20, 2014. Dkt. 16 at 3. The ALJ's decision refers to May 4,

14   2015 as the date the application was filed. AR 1460-1461.

15       Defendant argues the ALJ properly declined the request as untimely. Dkt. 22 at

16   3-4. Defendant does not contend plaintiff's request would have been untimely if her third

17   hearing had been the only hearing on plaintiff's claim; defendant argues the request

18   was untimely because it was "not raised at the first opportunity to do so," at plaintiff's

19   first hearing in February 2017. *Id.* at 4.

20       The Commissioner's regulations do not require plaintiff to raise the issue at the

21   first opportunity. Although the regulations generally require a claimant to object to the

22   issues to be decided at a hearing beforehand, *see* 20 C.F.R. § 416.1439, the

23   regulations do not prohibit a claimant from objecting to the issues to be decided at a

24

25

subsequent hearing when the same issue was not raised at an earlier hearing. *See id.* The Commissioner's regulations indicate an ALJ can consider any issue at a hearing following a federal court remand, even if the issue were not raised at the administrative hearing that occurred before the Court ordered a remand. *See* 20 C.F.R. § 416.1483(a) ("When a Federal court remands a case to the Commissioner . . . [a]ny issues relating to the claim(s) may be considered by the Appeals Council or [ALJ] whether or not they were raised in the administrative proceedings leading to the final decision in the case."). And notices plaintiff received before the second and third hearings suggest she could object to the issues to be decided. *See* AR 829, 1584.

Imposing a retroactive timeliness requirement without any basis in defendant's regulations would be improper. *See Newman v. Chater*, 87 F.3d 358, 361 (9th Cir. 1996) ("[A] primary purpose of requiring agencies to act by regulation is to prevent *ad hoc* policy determinations. When Congress says that the Commissioner shall prescribe circumstances by regulation, we see no reason why the Commissioner should be entitled to prescribe circumstances by other means.").

Defendant cites the judicial exhaustion requirement propounded in *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), in support of its position. *Meanel* requires claimants to raise issues at the administrative level before arguing those issues when seeking judicial review; it does not require that they do so at the first opportunity, only that they do so some point during consideration of the application at the agency level. *See id.*; *see also White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022) (describing *Meanel* as requiring claimants raise issues at either a hearing or before the AC). The rule reflects the "optimal position" of the ALJ to resolve certain factual issues, *Meanel*, 172

1    F.3d at 1115, but the optimal position exists whether it is presented to the ALJ or the AC

2    during the initial appeal, first round remand hearing, second, or third round remand

3    hearing process. *See* 20 C.F.R. § 416.1483(a). So *Meanel* is inapplicable here.

4        Defendant also argues SSR 11-1p bars plaintiff from using her request for AC

5    review as a protective filing date. Dkt. 22 at 3. The ALJ referred to SSR 11-1p, but did

6    not indicate this was the basis for rejecting plaintiff's objection; the ALJ only relied on

7    lack of a timely request. AR 1436. And, it is, at best, ambiguous whether SSR 11-1p

8    bars plaintiff from requesting a protective filing date.[2] The Court cannot affirm the ALJ's

9    decision on a basis on which the ALJ did not rely. *Garrison v. Colvin,* 759 F.3d 995,

10   1009 (9th Cir. 2014). Thus, the ALJ must reconsider plaintiff's objection to the filing date

11   on remand.

12   **B. Whether the ALJ Properly Assessed the Medical Opinion Evidence**

13       Plaintiff challenges the ALJ's assessment of several medical opinions. Dkt. 16.[3]

14   Plaintiff filed her application before March 27, 2017, therefore under the applicable

15

16   [2] Under SSR 11-1p, "[i]f [a claimant] decide[s] to pursue [her] administrative review rights on [her] pending
     disability claim, [Commissioner] will not accept [her] subsequent application for benefits under the same
17   title and for the same type of benefit as the pending claim." Thus, the ruling would bar plaintiff from
     submitting a new claim for SSI while seeking AC review of a pending SSI claim. But it is not clear whether
18   SSR 11-1p operates as a mere claims-processing rule or extends further to barring a claimant from
     requesting an earlier protective filing date for an application filed after exhausting her administrative
19   review rights. If the latter interpretation is given, the policy interpretation ruling would create an exception
     to Commissioner's otherwise-unqualified regulations permitting protective filing dates (*see* 20 C.F.R. §
20   416.340). Moreover, SSR 11-1p entitles a claimant to a protective filing date while their claim is pending
     AC review if they submit evidence to the AC that does not pertain to the period under review; here,
21   plaintiff submitted new evidence, some of which came from after the date of the ALJ's final decision in the
     matter (February 13, 2014), arguably justifying a protective filing date under the ruling. *See* AR 120
22   (plaintiff submitted evidence dated November 7, 2013 to April 8, 2014); *see also* POMS-GN
     00204.010(F)(1) ("A request for AC review that is based on additional evidence relating to a period after
     the Administrative Law Judge (ALJ) hearing decision is a protective writing.").

23   [3] Plaintiff also summarizes some of the rest of the medical evidence but raises no argument in doing so.
     *See* Dkt. 16 at 10–13. The Court declines to assess this evidence, as it will not consider matters that are
24   not "'specifically and distinctly'" argued in the plaintiff's opening brief. *Carmickle v. Comm'r Soc. Sec.*

25

regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). Yet "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752). "[T]o discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

---

*Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1.  Pre-2014 Medical Opinions

Plaintiff argues the ALJ erred in assessing medical opinions from her prior claim (those of Keith Krueger, Ph.D., rendered in April 2009; Jack Norris, Ph.D., March 2010; Terilee Wingate, Ph.D., March 2011, February 2012, and December 2013; and Mary Lemberg, MD, August 2012). Dkt. 16 at 4. The ALJ properly rejected the opinions, all of which were at least eighteen months before the relevant period, because they "assessed the claimant's function well before the filing date." AR 37; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Even so, because this analysis was based on the May 4, 2015 filing date and the ALJ will need to reassess the plaintiff's request for a protective filing date of March 20, 2014 on remand, the ALJ may need to reassess whether any of this evidence should be considered on remand.

2.  Dr. Wingate, Dr. Wheeler, and Dr. De Lira

Plaintiff challenges the ALJ's consideration of the medical opinions of examining consultants Terilee Wingate, Ph.D. (opinions rendered June 2015, AR 441–47; May 2019, AR 1005–09; April 2021, AR 1880–84; and January 2022, AR 1885–88); Kimberly Wheeler, Ph.D. (May 2017, AR 984–88); and April De Lira, MD (November 2018, AR 1426–33). Dkt. 16.

Dr. Wingate opined plaintiff had several limitations in her mental abilities, including marked limitations in her abilities to perform activities within a schedule, communicate and perform effectively, maintain appropriate behavior in a work setting, and complete a workday or workweek without interruptions from psychologically based symptoms. *See* AR 443, 1007, 1882, 1887. Dr. Wheeler opined plaintiff had severe

1   limitations in those same areas. AR 986. Dr. De Lira's evaluation report states plaintiff

2   had poor abilities to adapt to stresses, interact, maintain regular attendance, and

3   complete a normal workday and workweek without interruptions from psychologically

4   based symptoms. AR 1431.

5        The ALJ rejected the opinions for similar reasons. *See* AR 1452–58. First, the

6   ALJ found all the opinions conflicted with normal mental status examination results from

7   the exams administered by each source. AR 1452–58. Those mental status

8   examinations revealed normal findings about plaintiff's memory, concentration,

9   judgment, perception, and orientation. *See id.*

10       Yet this was not the only objective medical evidence and explanation; the

11  sources conducted clinical interviews, often described her as appearing anxious, and

12  Dr. Wingate twice conducted depression and anxiety inventories. *See* AR 441–42,

13  1005–06, 1880–81, 1885–86, 984–85, 1426–27; *see also Buck v. Berryhill*, 869 F.3d

14  1040, 1049 (9th Cir. 2017) (clinical interview is "objective measure[]"). The sources

15  provided clinical findings and other explanations for their opined limitations, discussing

16  plaintiff's anxiety, her concerns about not wanting to go out of her house, depressive

17  and manic episodes, and symptoms of OCD which cause her to overfocus and

18  ruminate. *See* AR 442, 1006, 1881, 1886, 984–85, 1426–27, 1426–27.

19       The normal findings in memory, concentration, judgment, perception, and

20  orientation do not conflict with the reports showing marked or severe limitations. The

21  normal findings are not probative as to plaintiff's abilities to perform within a schedule,

22  adapt, or complete a normal workday without interruptions from her impairments of

23

24

25

OCD, agoraphobia, anxiety, and depression. The ALJ erred by overlooking the supporting explanations and objective medical evidence described by the sources.

Second, the ALJ found the opinions were "inconsistent with treatment records showing that [plaintiff's] symptoms improved and stabilized with treatment," as plaintiff "endorsed" improvements in her "mood, sleep, energy, concentration, and social functioning." AR 1458; *see also* AR 1450 ("the medical evidence reveals that her symptoms otherwise improved and stabilized with mental health treatment") (citing AR 399, 426, 576, 578, 608, 615, 619, 622, 623, 1023, 1107, 1116, 1120, 1124, 1126, 1132, 1134, 1136, 1138, 1143, 1145, 1148, 387, 1402, 1404, 1407, 1409, 1411, 1413, 1415, 1417, 1420).

"[S]ome improvement" in a person's symptoms "does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). The ALJ's finding that plaintiff's symptoms improved such that they were no longer interfering with her abilities to the extent opined was not supported by substantial evidence. To the extent that some improvement was shown, the ALJ did not identify the date on which those improvements were consistently documented as having been achieved. See page 18 of this opinion, regarding medical evidence of later improvement with treatment.

The medical record shows plaintiff reported that when she was a child she was mentally abused, physically abused, and witnessed domestic violence; she also reported that as an adult she experienced physical and emotional abuse by the father of her child, for 16 years. AR 1164.

Plaintiff was taking medications for mental conditions, but the medical record does not indicate those medications were effective in successfully addressing symptoms and limitations that are at issue. Some evaluation reports and notes from appointments described her symptoms as stable, baseline, or controlled, but these are relative terms; and those records consistently described abnormal mental symptoms. *See, e.g.*, AR 426 (anxiety "stable" and "panic attacks improving" but still having panic attacks "multiple times per day"); 608–23 (same); 1023 (improvement of depression symptoms but "presents with anxious/fearful thoughts, compulsive thoughts, depressed mood, difficulty concentrating, diminished interest or pleasure, fatigue, feelings of guilt, racing thoughts and restlessness"); 1107 (describing some symptoms as "fairly controlled" but noting plaintiff presents with the same symptoms); 1120–34 (multiple appointments describing plaintiff as responding well to therapy but noting anxious mood); 1402–22 (same).

Third, the ALJ found plaintiff's representations relied upon by each source conflicted with other evidence in the record. *See* AR 1454, 1457, 1458. The ALJ found plaintiff's representation to each source that she could not leave her home contradicted evidence "she is actually able to function in public environments alone." AR 1454, 1457, 1458; *see also* AR 1450 (plaintiff "at least occasionally able to leave her house unaccompanied," citing AR 496, 566, 984–85, 1006, 1408).

This finding about plaintiff leaving home by herself was not supported by substantial evidence—the records pointed to by the ALJ do not indicate plaintiff could leave her home unaccompanied. *See* AR 496 ("will not go outside the house alone," "partner takes time off to get her to appointments," "he takes her to the store," "she is

afraid to leave her house, "she will not leave her back yard alone"); 566 ("We also talked about refocusing on leaving her house for gradually increasing distances away."); 984–85 (partner "usually accompanies her when she leaves home," sometimes brother will "come over to get [her] and make [her] walk to his house"); 1006 ("she gets a ride from her partner," "goes grocery shopping once a month with her partner"); 1408 ("she has been walking," but does not specify if alone).

The ALJ also found plaintiff's representation that she was sometimes unable to leave the bed because of depression inconsistent with evidence she "completes her activities of daily living." AR 1454, 1457, 1458; *see also* AR 1450 (citing records related to activities of daily living as contrary to plaintiff's claim she was sometimes unable to leave the bed). It could be true that plaintiff both completes her activities of daily living and is also sometimes unable to leave the bed. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) ("Ferguson can both do nothing when he has severe headaches and engage in his daily activities when he does not.").

Finally, the ALJ found the opinions

> inconsistent with the claimant's demonstrated activities in her personal life. She is able to manage self-care, cook, perform household chores, shop, run errands, deal with finances, and socialize with family and friends. She is also able to help her significant other's daughter with homework. She also enjoys mentally demanding hobbies like reading and playing videogames. These activities suggest that her mental health symptoms are not as debilitating as alleged.

AR 1458. The ALJ did not explain, nor can the Court discern, how such activities clash with most of the opined limitations. No evidence suggests plaintiff's activities of daily living required adherence to a regular schedule, work-related communication or behavior, or adaptation to stresses. The evidence showed many of her activities did not occur during depressive episodes.

1    The ALJ failed to provide sufficient reasons for rejecting the medical opinions of

2  Drs. Wingate, Wilkinson, and De Lira. Because those opinions reflected plaintiff was

3  more limited than the limitations determined by the ALJ in the RFC, this error was not

4  harmless. *Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008);

5  *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988).

6           3.  Non-Examining Sources

7           Plaintiff also challenges the ALJ's assessment of the opinions of nonexamining

8  sources Drs. Regets, Koukol, and Lewis. Plaintiff argues the ALJ's finding that all three

9  opinions were persuasive was erroneous because "none of these non-examiners

10 reviewed all of the evidence, and their opinions are inconsistent with the opinions of

11 [plaintiff's] examining and treating physicians" (Dkt. 16 at 13); yet this is not enough to

12 establish error in the evaluation of these opinions. *Andrews v. Shalala*, 53 F.3d 1035,

13 1041 (9th Cir. 1995) ("[T]he report of a nonexamining, nontreating physician need not

14 be discounted when it is not contradicted by *all other evidence* in the record.")

15 (quotation omitted, emphasis in original); *Elsey v. Saul*, 782 Fed. App'x 636, 637 (9th

16 Cir. 2019) (unpublished) ("The regulations require that an ALJ evaluate the degree to

17 which a non-examining source considers the evidence, not that a failure to consider all

18 evidence requires the source to be discounted.").

19 **C. Whether the AL's Assessment of Plaintiff's Statements About Symptoms**

20   **and Limitations Was Supported by Substantial Evidence**

21           Plaintiff testified she cannot leave her home due to anxiety issues and, in a

22 typical month, only leaves once or twice accompanied by others. AR 58–59, 70–72,

23 693, 696, 1490. She testified to periodic anxiety attacks that cause her to be afraid,

24

25

1   nervous, and unable to breathe. AR 77. At times, plaintiff cannot leave the bed, because

2   of depression. AR 75–76. The ALJ was required to provide specific, clear, and

3   convincing reasons for rejecting this testimony. *Ghanim v. Colvin,* 763 F.3d 1154, 1163

4   (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

5        The ALJ rejected plaintiff's testimony, for the most part, based on the same

6   reasons and evidence he referred to in rejecting the opinions of Drs. Wingate, Wheeler,

7   and De Lira, specifically: plaintiff's activities of daily living; the purported inconsistencies

8   — between plaintiff's activities and her testimony of being periodically unable to leave

9   the bed, and between her allegations of being unable to leave the house alone and

10  evidence showing she left the house with others; and statements in treatment notes

11  describing her condition as stable and improved. *See* AR 1449–51; Dkt. 22 at 15. For

12  the reasons discussed above relating to the medical evidence, those reasons cited by

13  the ALJ for rejecting plaintiff's statements are not supported by substantial evidence or

14  adequate to discount allegations of severe symptoms and limitations.

15       The ALJ also discounted plaintiff's testimony based on some normal mental

16  status examinations finding she had normal orientation, thought process, memory, and

17  concentration. AR 1452. The ALJ's decision does not provide reasons why the ALJ

18  interpreted this evidence as clashing with plaintiff's allegations. *See Ferguson v.*

19  *O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) ("[T]o satisfy the substantial evidence

20  standard, the ALJ must...explain why the medical evidence is *inconsistent* with the

21  claimant's subjective symptom testimony.") (emphasis in original).

22       Furthermore, the decision of the ALJ does not show why the *abnormal* notations

23  in the same treatment notes would be less probative than other observations or

24

25

evaluation results. *See Brown-Hunter v. Colvin*, 804 F.3d 487, 492 (9th Cir. 2015) (The ALJ must "set forth the reasoning behind [his] decision[] in a way that allows for meaningful review."); *see also e.g.*, AR 413 (much anxiety, psychomotor restlessness), 414 (anxious mood and antsy affect), 417–18 (engaged despite anxiety, restless behavior, tearful and tenuous affect), 570 (anxious), 620 (agitated and increased psychomotor activity, nervous and uneasy mood), 624 (agitated and increased psychomotor activity and some increased hand movements, nergous and uneasy mood), 634 (very anxious), 639 (fidgety and nervous), 1088 (anxious with pressured speech), 1093 (anxious), 1104 (same), 1110 (anxious affect, fearful), (anxious, agoraphobia, anxious mood, affect flat), 1161 (visibly anxious, tearful, difficulty calming down), 1157-58 (anxious and mildly depressed mood and affect), 1155 (mildly anxious and depressed mood and affect, tearful), 1154 (same).

The ALJ also discounted plaintiff's testimony because she allegedly ignored medications. AR 1451 (citing AR 405, 608, 1160). The record reflects she stopped taking one medication because it made her tired (AR 405); stopped another and was doing well without it (AR 608); and stopped taking another because it was not FDA approved and did not help her symptoms (AR 1160).

The ALJ erred by failing to consider or ask plaintiff about potential reasons as to why plaintiff was declining to take or renew certain medications. *See* SSR 16-3p ("we will not find an individual's symptoms inconsistent with the evidence" on the basis of failure to follow prescribed treatment "without considering possible reasons he or she may not comply with treatment," including that a claimant "may receive periodic treatment or evaluation for refills of medications because his or her symptoms have

reached a plateau"). And, three instances of medication non-compliance over an eight-year period because of reassessments of efficacy is not substantial evidence in the context of the overall medical record.

Plaintiff also testified she experienced hand and wrist numbness. AR 690-692, 1491. The ALJ did not find her related impairments severe at step two. AR 1452.

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The Ninth Circuit emphasized in *Buck v. Berryhill* that the step two inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill,* 869 F.3d 1040, 1048–49 (9th Cir. 2017) (rejecting claim that ALJ erred after second hearing, where ALJ found new severe impairments but did not change RFC). The Court noted that an ALJ assessing a claimant's RFC before steps four and five "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *5).

Thus, the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two. *Id.* In *Buck,* the Ninth Circuit concluded that because the ALJ decided step two in the claimant's favor and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand." *Buck* at 1049 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

Defendant contends the ALJ adequately addressed these symptoms because he found plaintiff's failure to undergo carpel tunnel release surgery based on family issues

1    showed the condition was not severe enough to receive medical attention. Dkt. 22 at 16

2    (citing AR 1752, 1773). This reason for finding a condition "non severe" at step two is

3    not based on substantial evidence. If a carpal tunnel condition was not severe enough

4    for emergency or urgent surgery, this does not mean it would not have more than a

5    minimal effect on the individual's ability to function in a workplace; plaintiff testified

6    about family members with health problems (plaintiff testified in 2020 that her significant

7    other had foot surgery and stepdaughter had back surgery, AR 690-691) that inhibited

8    her from receiving the surgery. And, there are financial ramifications, considering the

9    surgery was declined at a time plaintiff was unemployed.

10         The ALJ failed to provide specific, clear, and convincing reasons for rejecting

11    plaintiff's subjective testimony. Because plaintiff's testimony suggests she is further

12    limited than found in the RFC, this requires reversal. *See Carmickle,* 533 F.3d at 1160.

13      **D. Whether the ALJ Properly Assessed the Lay Witness Evidence**

14         Plaintiff argues the ALJ failed to give proper reasons for rejecting a statement

15    from her significant other who resides in the same home with her (AR 332–39). Dkt. 16

16    at 16–17. Because the ALJ relied on the same reasoning and evidence in rejecting this

17    statement as he relied on in rejecting the subjective symptom testimony and the medical

18    opinions (*see* AR 1455) the Court finds error as described above, and the ALJ will need

19    to review this evidence from plaintiff's significant other on remand.

20      **E. Remedy**

21         Plaintiff requests that the Court remand for an award of benefits. Dkt. 16 at 18–

22    19. "The decision whether to remand a case for additional evidence, or simply to award

23    benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682

24

25

(9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Even when each element is satisfied, the district court still may remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Upon review of the record, the Court concludes that even though there have been three hearings already, the record is not free from relevant conflicts, including conflicts in the medical evidence. For example, there is more recent medical evidence that shows potential improvement in plaintiff's mental health conditions. See AR 1952-1965,1974-1999. The Court therefore remands for further proceedings.

//

//

//

//

1

<u>CONCLUSION</u>

2       For these reasons, the Court concludes the ALJ improperly determined plaintiff to

3  be not disabled. Therefore, the ALJ's decision is reversed and remanded for further

4  administrative proceedings.

5       Dated this 7th day of February, 2025.

6

7

8                                    _____
                                     Theresa L. Fricke
9                                    United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25